The People of Puerto Rico, Plaintiff and Appellee, *v.* Luis Betancourt, Defendant and Appellant.

No. 11126.   Argued March 7, 1946.—Decided May 20, 1946.

*Santos P. Amadeo* and *Gilberto Concepción de Gracia* for appellant. *E. Campos del Toro, Attorney General, Luis Negrón Fernández, First Assistant Attorney General,* and *J. Correa Suárez, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Travieso delivered the opinion of the court.

Luis Betancourt, Víctor Miranda, and Vicente Salamán were prosecuted for robbery in that they did "unlawfully,

wilfully, maliciously, and feloniously take a pocketbook containing the sum of $10 and other valuable documents, belonging to and in the possession of Nicolás Pedrosa Montañez, from the person of said Nicolás Pedrosa, in his immediate presence, against his will, and by means of force and fear.'' Betancourt was tried separately, and he now appeals from the judgment whereby he was sentenced to a term of six years in the penitentiary.

■ As a first assignment he urges that the verdict was contrary to law (*a*) because the district attorney neither alleged nor proved that between defendant appellant and the other two codefendants there was any community of unlawful purpose when the crime was committed; and (*b*) because the district attorney failed to allege or prove that the use of force by the appellant was for the purpose of committing robbery.

Section 238 of the Penal Code defines the crime of robbery as ''the felonious taking of personal property in the possession of another, from his person or immediate presence and against his will, accomplished by means of force or fear.'' The information in the present case conforms to the language of the statute and alleges all the elements necessary to constitute the crime of robbery. The district attorney was not bound to allege or prove the existence of a preconceived and premeditated plot by and between the three defendants to commit the robbery. He was only bound to prove the participation of defendant Betancourt in the criminal act of taking the pocketbook and money of Pedrosa, from the person of the latter, against his will, and by means of force. *People* v. *Thomas*, 113 P. (2d) 709.

■ Once proof was made of the illegal act committed against the person and property of Pedrosa, and of the connection of the accused with the commission of the same, the law presumes that the act was done with a criminal intention and it was incumbent on the defendant to introduce

evidence from which there might arise a reasonable doubt as to the existence of that criminal act or purpose. 22 C.J.S. § 34, p. 92; *People* v. *Harris,* 29 Cal. 679; *People* v. *Bushton,* 80 Cal. 162; *People* v. *Boling,* 83 Cal. 382; *People* v. *Ah Gee Yung,* 86 Cal. 147; *People* v. *Johnson,* 106 Cal. 289; *People* v. *McGlade,* 139 Cal. 66; § 12, Penal Code of Puerto Rico; *People* v. *Giraud,* 23 P.R.R. 492; *People* v. *Juliá,* 25 P.R.R. 238; *People* v. *Brau,* 27 P.R.R. 713.

██ Where, as in the case of robbery, a specific intent is not an element of the crime, it is not necessary to allege or prove any specific intent. *State* v. *Howard,* 111 So. 72, 162 La. 719.

██ In the second assignment it is alleged that the verdict is against the weight of the evidence.

The evidence taken as a whole is conflicting. Pedrosa testified that on the night of the occurrence, while he was going to his work in the docks, upon alighting from a bus he met the three defendants who were standing at Stop 4; that the three defendants followed him and one of them struck him and knocked him down; that he knew the defendants by sight but not by name; that the one who hit him was Betancourt, whom he recognized; that upon receiving the blow he lost consciousness; that when he awoke in the warehouse of the A.D.A. the defendants had him on the ground, two of them holding him and the other one drawing the money out of his pocketbook; that while two of them searched him, the defendant, Betancourt, held him; that the pocketbook contained $10 and an inscription card; that there was no exchange of words between him and Betancourt before the latter struck him.

Angel Manuel Betancourt, brother of the defendant, admitted that it was the defendant who struck Pedrosa; and he stated that the other two defendants dragged Pedrosa to an entrance hall; but that the defendant did not enter the hall. Upon the witness being confronted with a previ-

ous statement made by him, he admitted that his brother had also helped to carry Pedrosa into the entrance hall and that the other two defendants searched him there.

The witness Isidro Lligas Torres stated that it was the defendant who hit Pedrosa; that Pedrosa fell to the ground; that then defendant Miranda, known as "Contentito," struck him on the ground "and the three of them got him into the shed," carrying him there because he was unconscious; that the three were "Indio" Vicente Salamán, "Contentito," and Olivo; that Betancourt was not among them.

Julio Olivo testified that he saw Betancourt strike Pedrosa with his fist; that Pedrosa fell to the ground and then "Contentito" kicked him there; that defendant Betancourt and the other two men carried Pedrosa into the entrance hall; that the defendant came out and the other two men stayed searching him and then the witness heard the voice of "Contentito" saying: "I have the pocketbook but it is empty"; that Betancourt took no part in the search.

The testimony of the defendant tended to show that he struck Pedrosa because the latter spoke disrespectfully of his mother; that after Pedrosa was knocked down the other two defendants lifted him up and carried him into the entrance hall and searched him there; that the witness did not help carry or search Pedrosa.

The jury resolved the conflict by giving credit to the testimony of Pedrosa, which was corroborated by that of the other witnesses, as to the fact that the defendant had participated in carrying Pedrosa to the place where his companions searched Pedrosa and took the money away from him. Since the evidence believed by the jury was sufficient to support the information, it is our duty to respect the verdict and the judgment.

██ On cross-examination, the district attorney asked defendant the following question: "Do they used here the system of asking for a cigarette or for light in order to carry out a hold up?" The defense objected without stating any ground therefor. The court allowed the question and the defendant answered it thus: "I did not ask for a cigarette." Counsel for the defense took no exception, nor asked that the question be stricken out, nor did he request the court to instruct the jury that the latter should not take the question into consideration. Evidently the attorney for the defendant did not attach to the incident the importance which is now sought to be attributed to it on appeal.

The question asked by the district attorney was justified by the evidence. The defendant's brother testified that when they arrived at the place of the occurrence, the defendant, his brother, "approached Pedrosa and asked him for a cigarette and the latter answered insultingly, and then my brother hit him with his fist and the man fell." The defendant himself testified that he had asked Pedrosa for light. We do not think that the question could have caused any prejudice to the rights of the defendant. The case of *People* v. *Marchand*, 53 P.R.R. 640, presented a wholly different situation. There the prejudice caused to the substantial rights of the defendant was so manifest that we did not hesitate to reverse the judgment and order a new trial.

██ We can not say that the trial court abused its discretion in sentencing the defendant to a term of six years in the penitentiary, inasmuch as the crime of robbery is punishable by imprisonment in the penitentiary for not less than one year and not more than twenty years. Section 240, Penal Code.

The judgment appealed from should be affirmed.